WILLIAMS, Judge.
Defendant, James V. Haydel, appeals from a jury verdict recognizing plaintiff, *465 Severin N. Goods, as rightful owner of certain shares of stock, and awarding him $75,000.00 for the loss of the dividends thereon. We find that there was insufficient evidence to support the jury’s verdict and therefore reverse in part.
Plaintiff, Severin N.. Goods, brought suit against James V. Haydel for the recovery of shares of stock of two sister corporations, Majestic Life Insurance Company and Majestic Mortuary Service, Inc., and for damages consisting of deprivation of dividends on the shares, interest on said dividends, and mental anguish and exacerbation of various physical ailments allegedly stemming from wrongful deprivation of the shares. The case was heard by a jury which returned a verdict in favor of the plaintiff, recognizing him as rightful owner of the shares in question,. and awarding him $75,000.00 for the loss of the dividends thereon.
FACTS
Severn Goods and James Haydel were both shareholders in two corporations, Majestic Insurance Company and Majestic Mortuary Service, Inc. since their respective incorporations in the 1950’s.
In 1962, Goods asked Haydel to hold his shares in both companies, with the exception of 10 shares of stock in the insurance company (the “qualifying shares”), retention of which permitted Goods to remain a member of the board of directors.[1] Thereafter, the secretary of the companies, Dr. Alvin J. Aubry, listed James V. Haydel as the owner of those shares in the company records.[2] There is no dispute that this transfer was for the convenience of Goods and that neither party intended the beneficial ownership of the shares to be vested in Haydel. In January, 1963, the qualifying shares were also transferred to defendant, Haydel, In February, 1964, plaintiff declared voluntary bankruptcy.
In 1966, the ten qualifying shares were re-transferred from Haydel to Goods, but in June of 1972 Goods again transferred these shares to Haydel. Thereafter Goods did not appear as the registered holder of stock of either Majestic company. The following January, 1973, Goods again declared voluntary bankruptcy.
The dispute over the stock arises out of the transfer of $8,000.00 from Haydel to Goods in 1965. Haydel contends that when he tendered the $8,000.00 to Goods, Goods sold his beneficial interest in both Majestic companies to Haydel and, as record ownership of the shares was already vested in Haydel, no further transfer of the shares was required. Goods contends that the $8,000.00 was a loan from Haydel and that he, Goods, paid interest in cash each year at the rate of 6%, for a sum of $480.00 a year.
Goods tendered a cashier’s check in the sum of $8,000.00 to Haydel in 1980, fifteen years after Goods had received the same amount from Haydel. Goods contends that at this point, all conditions of his obligation to Haydel were satisfied, and the shares of stock should then have been re-transferred from Haydel to Go.ods.
Goods had the burden of proving by a preponderance of the evidence that Hay-del at all times held the stock in question as a matter of convenience and that the transfer of $8,000.00 did not constitute a sale of the stock to Haydel. “Proof by a preponderance of the evidence” means proof that existence of a disputed fact is more probable than its nonexistence. Butler v. Baber, *466 529 So.2d 374, reh’g den. (La.1988). We find that Goods failed to meet his burden of proof.
The jury’s verdict is based entirely on Goods’ testimony that the $8,000.00 he received from Haydel was a loan and that the parties did not at any time intend to transfer the beneficial ownership of the stock to Haydel. As appellant points out, Goods did not present receipts, cancelled checks, or any other evidence to corroborate his testimony that he paid $480.00 in interest each year to Haydel. Haydel flatly denied either having received or having been offered these amounts.
For the reasons stated herein, we reverse the finding that Goods is the owner of the shares of stock which he transferred to Haydel, with the exception of ten shares of the Majestic Life Insurance stock. We do not reverse the judgment of the lower court for lack of credibility of the plaintiff, nor do we disturb the jury’s apparent finding of the plaintiff’s credibility. The problem herein is not lack of credibility but simply lack of evidence: the plaintiff failed to present sufficient evidence to carry his burden of proof.
It is undisputed that from 1962 to 1965, Haydel signed the dividend checks over to Goods and that once the $8,000.00 changed hands hr 1965, Haydel kept the dividends for himself. Goods does not explain why he failed to take any legal action to obtain the dividends until nineteen years later when he filed the present suit.[3] Goods further testified that he asked Haydel to return the stock many times in the intervening period. He stated that Haydel responded that he should be patient. However, Goods offers no evidence or explanation as to why he waited almost two decades to take legal action to be recognized as the record owner of the stock rather than Haydel, who had been listed on the company ledger as the owner of the stock since March of 1962.
We note that the record is fraught with evidence of irregular conduct and apparent ethical problems if Goods’ story is to be believed. From the time he transferred the stock to Haydel (March of 1962) until the time he finally took legal action to obtain the stock (May of 1984), over twenty-two years, Goods declared bankruptcy twice. The first bankruptcy petition, filed in February, 1964, did not include any shares of stock in the list of assets. Both parties agree that at that time Goods was indeed the actual beneficial owner of the stock.
Goods again failed to list the stock as an asset in the second bankruptcy petition, filed in 1973. Furthermore, though Goods contends that he had not sold his stock and that the $8,000.00 he received from Haydel in 1965 was a loan, Goods failed to list Haydel as a creditor in the 1973 bankruptcy petition.
When questioned about the $8,000.00, Goods replied that James Haydel offered eight thousand dollars to him without solicitation for his own (Haydel’s) benefit. Goods further explained that, although Haydel already had Goods’ stock, “to keep my stock he had to find some way to get that stock from me and hold onto it.” Goods’ fails to prove that his theory (that Haydel loaned him $8,000.00 with the intention of allowing Goods to regain his stock fifteen years later upon repayment) is more probable that Haydel’s theory that Goods sold his stock in 1965. In Haydel’s favor are the undisputed facts that he has been the record owner of the stock since 1962, that he was the recipient of the dividends of the stock since 1965, when he tendered $8,000.00 to Goods, and that Goods did not take any legal action against him in the intervening nineteen years from the date of the transfer of funds.[4] In Goods’ favor there is only his testimony.
*467 We do find, however, that Goods continued to be the beneficial owner of ten shares of stock in the insurance company. The record reveals that the ten qualifying shares of the Majestic Life Insurance stock were transferred to Haydel less than one year prior to the filing of the.first bankruptcy petition, before the transfer of the $8,000.00. However, these ten shares were subsequently re-transferred to Goods in 1966. The shares were then transferred again from Goods to Haydel in 1972, less than one year prior to the filing of the second bankruptcy petition. The re-transfer of the ten shares to Goods in 1966 would indicate that ownership of these shares continued to vest in Goods after the transfer of $8,000.00 in 1965 and that Hay-del continued to hold the shares as a matter of convenience. This position is further supported by the fact that Goods remained on the Board of Directors for the Majestic Life Insurance Company until 1972.[5] For these reasons, we find that Goods is the owner of ten shares of stock in the Majestic Life Insurance Company.
On the issue of loss of dividends for the ten shares of life insurance stock, Goods is entitled only to those damages which he proved. Although Goods failed to subpoena the Majestic Company records concerning.dividends, both Dr. Aubry and Mr. Hay-del testified as to the declaration of dividends, but only for the years 1963, 1964, 1982 and 1984-1988. Goods was not deprived of the dividends in 1963 and 1964, so he is entitled only to the dividends declared in 1982 and 1984-1988. Dr. Aubry testified that the insurance company declared dividends of $4.00 per share in 1982 and $6.00 per share for the years 1984 through 1988. Thus, the total amount of lost dividends to which Goods is entitled is $280.00 plus interest from the date the dividends were due.
For the reasons discussed above, we find that Goods owns only ten shares of Majestic Life Insurance stock and is entitled to $280.00 in dividends, plus interest from the date the dividends were due. We further find that Goods sold the remainder of his stock in both Majestic companies to Haydel in 1965.
REVERSED IN PART; AFFIRMED IN PART.

. At the time of the first transfer, Goods owned 149 shares of Majestic Mortuary stock and 78.68 shares of Majestic Life Insurance stock.

. There was testimony that this original transfer was not effected in compliance with the corporate charter, which requires the shareholder to offer the stock for sale to the company first, and requires that this offer be made in writing-Because the initial transfer is not in dispute, this testimony is irrelevant to the issues involved herein.
We note that the charter rules pertaining to transfer, as well as statutes requiring that stock certificates be turned in to the corporation at the time of transfer, were apparently systematically ignored by the Majestic companies and by Goods. Goods cannot now complain of this practice in an attempt to regain the shares of stock absent other evidence that he is entitled to the stock.

. Haydel stopped turning the dividends over to Goods in 1965, when he, Haydel, gave Goods the $8,000.00. Goods did not file suit until May 11, 1984.

. We also note the testimony of Dr. Alvin J. Aubry, secretary for the sister companies since their incorporation, regarding the value of the stock. This testimony is relevant to the question of whether Goods would have sold or Hay-del would have bought the stock in 1965 for $8,000.00. Dr. Aubry testified that the charter required that, if a shareholder wished to sell his stock in either company, he must first offer it to sell it to the respective company. The charter *467 provided that the price would be either the par value or book value, whichever was higher. Au-bry testified that in 1965, the par value of the mortuary stock was 135.00 a share, and the book value was $150.00 a share. The par value of the insurance stock was $15.00 a share, and the book value was $56.00. Thus, if Goods would have sold all of his stock at par value (149 shares in Majestic Mortuary and 78.68 shares in Majestic Life Insurance Co.), the price would have totaled approximately $6,395.00. However, if he had received book value, the price would have totaled approximately $26,-756.00.

. As noted, the corporate charter provides that a shareholder must own a minimum of ten shares in order to be on the Board of Directors. Goods was again placed on the Board of Directors in 1981 and subsequently removed. We note that the corporate charter does not ensure a position on the Board to every owner of ten shares or more; so that Goods’ absence from the Board is not inconsistent with the result herein.
In addition, the fact that the remaining shares were not also transferred back to Goods in 1966 gives greater weight to Haydel’s argument that those shares were in fact sold to him in 1965.